IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RICARDO ISMAEL ORTIZ,<br>    Movant, | §<br>§<br>§ | EP-24-CV-169-LS |
| v. | §<br>§ | EP-20-CR-1808-LS-1 |
| UNITED STATES OF AMERICA,<br>    Respondent. | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Movant Ricardo Ismael Ortiz, federal prisoner number 48909-480, challenges his sentence through a *pro se* motion under 28 U.S.C. § 2255. Mot. to Vacate, ECF No. 149.[1] His motion is denied.

### BACKGROUND AND PROCEDURAL HISTORY

Ortiz is a 34-year-old former high school teacher serving a life sentence for coercion or enticement and possession of child pornography. J. Crim. Case, ECF No. 109; Presentence Investigation, ECF No 104 at ¶¶ 123–26. He is currently confined at the Englewood Federal Correctional Institution in Littleton, Colorado. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. No. 48909-480, last visited July 10, 2025).

On July 19, 2020, Ortiz responded to the fictitious online persona of an 18-year-old male posted by an FBI employee. Presentence Investigation, ECF No. 104 at ¶ 11. During subsequent online exchanges, Ortiz admitted that he was 29 years old, and the online persona claimed he was a 14-year-old named "Pat." *Id*. at ¶ 11. Ortiz sent Pat a photo of his lower body with his penis exposed. *Id*. at ¶ 19. He arranged to meet Pat to engage in sexual activities at a residence in El

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-20-CR-1808-LS-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

Paso, Texas. *Id*. at ¶ 17. When Ortiz arrived at the house, he was arrested by FBI agents. *Id*. Ortiz admitted "he believed other sexual acts, aside from penetration, would have occurred if he had met Pat and that this was a 'huge wake-up call.'" *Id.* at ¶ 20. An initial review of Ortiz's Apple iPhone revealed several videos depicting suspected child sexual abuse material ("CASM")—including several completely naked images and a video chat between Ortiz and a 16-year-old minor. *Id*. at ¶ 22. A subsequent review of Ortiz's Mega Encrypted Global Access ("MEGA") accounts revealed approximately 60,000 files with images or videos of CSAM. *Id*. at ¶ 27.

Ortiz was indicted for producing a visual depiction of a minor engaging in sexually explicit conduct (Count One), engaging in coercion and enticement (Court Two), attempting to engage in coercion and enticement (Count Three), possessing a visual depiction involving the sexual exploitation of a minor (Count Four), and attempting to transfer obscene matter to a minor (Count Five). Indictment, ECF No. 15. Ortiz pled guilty, pursuant to an amended plea agreement, to a four-count felony information charging him with coercion and enticement (Counts One, Two, and Three), and possessing child pornography (Count Four). Information, ECF No. 72.

An addendum to the plea agreement suggested that the Government would consider requesting a downward departure from Ortiz's guideline sentence:

> If the Defendant fully complies with this agreement and the Government determines the Defendant has provided "substantial assistance" to law enforcement officers in their investigative efforts, the Government may consider filing a motion for downward departure pursuant to U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e) and/or Fed. R. Crim. P. 35, respectively. … The Defendant also understands and stipulates that the Government has the sole discretion to determine whether the Defendant's cooperation has complied with the terms of this agreement, and if the Government so finds, has the sole discretion to determine whether such a motion is warranted. Also, the Defendant understands that if the Government determines that the Defendant's cooperation has not complied with the terms of this agreement, the Defendant does not have the right to withdraw his guilty plea. Additionally, the Defendant further understands that a motion pursuant to U.S.S.G. § 5Kl.1, 18

2

> U.S.C. § 3553(e) and/or Fed. R. Crim. P. 35 is only a recommendation and is not binding on the Court, that this agreement confers no right upon the Defendant to challenge a Government determination that the Defendant has not provided substantial assistance, and that this agreement confers no remedy upon the Defendant in the event the Government declines to make a motion pursuant to U.S.S.G. § 5Kl.1, 18 U.S.C. § 3553(e) and/or Fed. R. Crim. P. 35.

Addendum to Am. Plea Agreement, ECF No. 77 at 2–3.

The probation officer who prepared the presentence report determined:

> Based upon a total offense level of 43 and a criminal history category of I the guideline imprisonment range is life. However, as to Count 4, the statutorily authorized maximum sentence of 20 years is less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 240 months.

Presentence Investigation, ECF No. 104 at ¶ 132.

Ortiz's counsel submitted six objections to the presentence report. Addendum, ECF No. 104-2 at 3. They disputed the facts contained in several paragraphs. *Id*. They objected to the two-level upward enhancement for unduly influencing a minor to engage in prohibited sexual conduct; five-level upward enhancement for using a computer to possess, transmit, receive or distribute the material; and five-level upward enhancement because the offense involved more than 600 images. *Id.* They requested a sentencing departure based on Ortiz's mental health and addiction, which they argued played a part in the offenses. *Id.*

The Government filed a motion for a sentencing variance. Gov't's Mot., ECF No. 100. It explained that Ortiz debriefed with agents following his guilty plea and identified five minors with whom he had engaged in sex acts or communicated online. *Id.* at 2. It added that the identification of these victims allowed the Government to offer them victim services. *Id*. It requested that the Court grant a downward variance to Offense Level 41 based on Ortiz's assistance. *Id.*

The Court considered and overruled Ortiz's objections to the presentence report.

Sentencing Tr., ECF No. 122 at 2:19–3:1. It also considered a report from a psychologist, Dr. James Schutte, Ph.D., who diagnosed Ortiz with bipolar disorder and attention deficit hyperactivity disorder ("ADHD") and denied his motion for a variance. *Id.* at 3:2–9:5. It found the following statement in Dr. Schutte's report "the most disturbing":

> [Movant] indicated that he does not know why it is illegal to have sexual contact with underage males, as the age of consent is 14 or 16 in some other countries. He, nonetheless, indicated that he will not engage in downloading of child pornography or sexual contact with underage persons again as it is, quote, not worth it, closed quote.

*Id.* at 6:15–6:21. The Court decided not to reduce Ortiz's sentence based on his debrief with agents following his guilty plea. *Id.* at 22:13–22:20. It committed Ortiz to the Bureau of Prisons for life as to each of Counts One, Two, and Three. J. Crim. Case, ECF No. 109 at 2. It sentenced him to 240 months' imprisonment as to Count Four. *Id.*

The Fifth Circuit Court of Appeals dismissed Ortiz's direct appeal after his appellate counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *United States v. Flores*, 632 F.3d 229 (5th Cir. 2011). *See United States v. Ortiz*, No. 22-50661 (5th Cir. May 18, 2023).

Ortiz now raises four ineffective-assistance-of-counsel claims in his § 2255 motion. Mot. to Vacate, ECF No. 149. First, he complains his counsel failed to file Dr. Schutte's report before his sentencing hearing. *Id.* at 4. Second, he asserts his counsel failed to call character witnesses at his sentencing hearing. *Id.* at 5. Third, he maintains he entered into the amended plea agreement with the understanding that the prosecution would support a downward variance, but the Court denied the variance and proceeded to sentence him without granting him an opportunity to withdraw his plea. *Id.* at 6. Finally, he claims his counsel "did not … attack on the enhancements

4

applied to the calculation of [his] offense level." *Id*. at 8. He asks the Court to consider resentencing him. *Id*. at 12.

## STANDARD OF REVIEW

Section 2255 "'provides the primary means of collateral attack on a federal sentence.'" *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not a "substitute for direct appeals." *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001); *see also United States v. Frady*, 456 U.S. 152, 167 (1982) (imposing a "cause and actual prejudice" standard on motions for collateral relief when no objection was made on direct appeal); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating "[w]here the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice.'"). It identifies only four grounds on which a prisoner may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Consequently, § 2255 does not permit relief on a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). It also requires the prisoner to bear the burden of establishing a claim of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*,

613 F.2d 86, 89 (5th Cir. 1980)). It permits a court to "vacate and set the judgment aside" if a prisoner's claims are meritorious and to "discharge the prisoner or resentence him or grant [him] a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). But it also allows a court to dismiss the motion "[i]f it plainly appears from the motion ... and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. foll. § 2255 Rule 4(b); *see also* 28 U.S.C. § 2255(b); *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

Despite these limitations, a prisoner may still bring a Sixth Amendment "ineffective-assistance-of-counsel claim … in a collateral proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003). If he does, his claim is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, he has the burden of showing (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient performance, he must prove that his counsel's assistance fell "'below an objective standard of reasonableness.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). In other words, he must show his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Lincks*, 82 F.4th 325, 330–31 (5th Cir. 2023). "[T]o establish prejudice, [he] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome.'" *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694). In a guilty-plea situation, the defendant must show that there is a reasonable probability that but for his counsel's errors he would not have pleaded guilty and would have insisted on going to trial. *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## ANALYSIS

### A. Failure to File Dr. Schutte's Report of Psychological Evaluation before Sentencing

Ortiz first argues his counsel provided constitutionally ineffective assistance when he failed to file Dr. Schutte's report with the Court before his sentencing hearing. Mot. to Vacate, ECF No. 149 at 4. According to Ortiz:

> The report outlined the defendant's low risk of recidivism, low societal threat, and explained the effects of the defendant's mental health status on his decision-making behavior. It further explained how world stressors and substance abuse contributed to the defendant's conduct. Had the report been submitted in a timely manner, the court could have taken the issues into proper consideration when making a sentencing decision.

*Id*.

Ortiz's counsel did advise the Court four days before sentencing that Dr. Schutte had diagnosed Ortiz with a bipolar disorder and ADHD, which were "associated with impulsive and erratic behavior." Sent. Mem., ECF No. 105 at 3. They observed that Dr. Schutte had scored Ortiz "in the average risk of sexual recidivism" and "noted that the risk score would decrease as he age[d]." *Id.* They asked that the Court to consider the role that Ortiz's mental health played in the offense and grant him a downward departure. Addendum to Presentence Report, ECF No. 104-2 at 2. So, through their objections and sentencing memorandum, Ortiz's counsel made the Court aware of the contents of Dr. Schutte's report before his sentencing hearing.

7

During Ortiz's sentencing hearing, the judge mentioned that he had not seen a copy of Dr. Schutte's report. Sentencing Tr., ECF No. 122 at 3:2–3:9. After a brief discussion with counsel, the judge was handed and had the opportunity to review a copy of the report. *Id.*, at 3:10–4:10. Consequently, the judge was able to consider the contents of the report before he imposed sentence. But after he examined the report, the judge focused on one part:

> This is the most disturbing part of this report, and I quote from the second page: He indicated that he does not know why it is illegal to have sexual contact with underage males, as the age of consent is 14 or 16 in some other countries. He, nonetheless, indicated that he will not engage in downloading of child pornography or sexual contact with underage persons again as it is, quote, not worth it, closed quote.

*Id.* at 6:14–6:21.

So, Ortiz's counsel negotiated a favorable plea agreement, filed objections to his presentence investigation, and requested a downward departure from the Sentencing Guidelines range based on his mental health and decision-making ability. Am. Plea Agreement, ECF No. 76; Addendum to Presentence Report, ECF No. 104-2; Sentencing Mem., ECF No. 105. They summarized Dr. Schutte's report in their sentencing memorandum and argued that it supported a downward departure. Sentencing Mem., ECF No. 105. They ensured that the Court received a copy of Dr. Schutte's report at Ortiz's sentencing. Sentencing Tr., ECF No. 122 at 3:10–4:10. But they were not prescient; they could not predict the judge's adverse reaction to the contents of Dr. Schutte's report—or the judge's decision to sentence Ortiz in accordance with the Sentencing Guidelines to life in prison as to Counts one, Two, and Three, and 240 months in prison as to Count 4, all to run concurrently. J. Crim. Case, ECF No. 109 at 2.

Accordingly, the Court finds that Ortiz cannot meet his burden of showing that his counsel's assistance fell "'below an objective standard of reasonableness.'" *Conley*, 349 F.3d at

8

841. The Court further finds that Ortiz cannot meet his burden of showing "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Wiggins* 539 U.S. at 534.

### B. Failure to Call Character Witnesses

Ortiz asserts that his counsel erred when they failed to call character witnesses at his sentencing hearing. Mot. to Vacate, ECF No. 149 at 5. He claims that his mother, father, and close friends were willing to testify on his behalf. *Id.* He believes that if these character witnesses had testified at his sentencing hearing or in prior proceedings, their testimony could have influenced the Court's sentencing decision in a positive way. *Id.*

"Because deciding whether to call witnesses is a strategic trial decision, … complaints of uncalled witnesses are 'disfavored' as a source of *Strickland* habeas review." *United States v. Harris*, 408 F.3d 186, 190 (5th Cir. 2005). And when defense counsel calls witnesses to portray defendants as individuals with good character, the prosecution can cross-examine those witnesses and introduce evidence to rebut those claims. *Pape v. Thaler*, 645 F.3d 281, 289 (5th Cir. 2011).

Ortiz's counsel solicited and attached character letters to a sentencing memorandum. Sent. Mem., ECF No. 105 at 6–10. They observed that "Ortiz has never contested the serious nature of his charges and the effects his behavior had on his victims." *Id*. at 2. They asserted that Ortiz's "mental health conditions of bipolar and ADHD [were] associated with impulsive and erratic behavior." *Id*. at 3. They noted that "Ortiz voluntarily met with the Government and admitted further criminal behavior so that unidentified victims could be identified and receive treatment for the abuse to which he subjected them." *Id*. They moved the Court to sentence Ortiz below the advisory guideline range. *Id.* at 4.

Because of Ortiz's cooperation, the Government also moved for a downward variance pursuant to 18 U.S.C. § 3553(a)(1) and asked the Court to sentence Ortiz to 324–405 months' imprisonment. Gov't's Mot. ECF No. 100.

The Court denied the motions, adopted the presentence investigation without change, and sentenced Ortiz within the guidelines range to life in prison. J. Crim. Case, ECF No. 109 at 2.

Ortiz only speculates about how the testimony of his proposed character witnesses would have influenced the Court to change his sentence. Notably, he has not provided affidavits which "set out the content of the witnesses' proposed testimony, and show that the testimony would have been favorable." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). He has not demonstrated that his counsels' performance was either deficient or prejudiced his cause.

### C. Failure to Grant a Downward Variance

Ortiz observes that he entered into the amended plea agreement with the understanding the prosecution would support a downward variance. Mot. to Vacate, ECF No. 149 at 6. But the Court denied the variance and proceeded with sentencing without granting him an opportunity to withdraw his plea. *Id.*

When Ortiz entered into the plea agreement, he indicated he understood he could not challenge the sentence, even if it differed from any estimated sentencing range:

> Defendant waives the right to challenge the sentence imposed, knowing that the sentence has not yet been determined by the Court. Defendant is aware that any estimate of the sentencing range received from defense counsel, the Government or the Probation Office, is not a promise, did not induce the guilty plea or this waiver, and does not bind the Government, the Probation Office, or the Court. In other words, Defendant understands that Defendant cannot challenge the sentence imposed by the District Court, even if it differs substantially from any sentencing range estimated by Defendant's attorney, the attorney for the Government, or the Probation Officer. Realizing the uncertainty in estimating what sentence Defendant will ultimately receive, Defendant knowingly and voluntarily waives the right to

> appeal the sentence or to contest it in any post-conviction proceeding in exchange for the concessions made by the Government in this Agreement, except as otherwise provided herein.

Am. Plea Agreement, ECF No. 76 at 7. At his re-arraignment hearing, Ortiz testified under oath that he understood he was "waiving [his] right to appeal and collaterally attack [his] sentence … unless [his] constitutional rights [were] violated because number one, [his] lawyer has been ineffective, or number two, there has been misconduct on the part of prosecution." Re-arraignment Tr., ECF No. 125 at 13:24–14:5. His counsel moved for a downward variance based on his mental health. Addendum, ECF No. 104-2 at 3. When Ortiz cooperated with the Government, the prosecution also moved for a downward variance. Gov't's Mot. ECF No. 100. So, Ortiz's complaint is that the Court—not his counsel or the prosecutors—denied the motions for a downward departure.

Even if the Court's decision to deny the motions for a variance was somehow in error—which it was not—any attempt to challenge the Court's sentencing calculation cannot be a basis for a § 2255 proceeding. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) ("Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed."). The Court's failure to grant the motions or even properly apply "the Guidelines does not give rise to a constitutional issue cognizable under § 2255." *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994)

### D. Failure to Attack Enhancements in Sentencing Guideline §2G2.2

Finally, Ortiz complains his counsel "did not raise an attack on the enhancements applied to the calculation of [his] offense level." Mot. to Vacate, ECF No. 149 at 8. He suggests that his

counsel ignored his extensive research into the ineffectiveness of Sentencing Guideline §2G2.2—with its multiple enhancements—"in providing a fair, evidence-based, empirical approach to calculating [his] offense level." *Id.*

The record belies Ortiz's argument. His attorneys did file six specific objections to the presentence report and did challenge the basis for the application of the enhancements in Sentencing Guideline §2G2.2 to his case:

> Mr. Ortiz objects to the application of these enhancements as they are not empirically based, ignore technological advancements and, thus, are applicable to the vast majority of offenders rather than a select few. The Sentencing Commission itself and a number of courts have questioned the wisdom of these guidelines and have called for reform.
>
> In 2021, the United States Sentencing Commission analyzed the efficacy of federal child pornography sentencing guidelines. *See* U.S. Sentencing Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses 1 (2021); https//ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf ("2021 Report"). The 2021 report found that technological advances had resulted in enhancements, originally intended only for the most serious offenses, being routinely applied to most offenders; that within-range sentences were imposed in less than 1/3 of non-production cases. As such, the Commission recommended that Congress provide authority for the Commission to amend the provisions to account for technological changes, emerging research, and variations in offender culpability and dangerousness. *Id*.
>
> The 2021 Report concluded,
>
> Constrained by statutory mandatory minimum penalties, congressional directives, and direct guideline amendments by Congress in the PROTECT Act of 2003, [Sentencing Guideline §]2G2.2 contains a series of enhancements that have not kept pace with technological advancements. Four of the six enhancements—accounting for a combined 13 offense levels—cover conduct that has become so ubiquitous that the now apply in the vast majority of cases sentenced under 2G2.2.
>
> In fiscal year 2019, 95% of non-production offenders received enhancements for the use of a computer and for the age of the victim. *Id*.

> Enhancements for having sadistic or masochistic conduct or abuse applied in 84% of cases and enhancements for having more than 600 images in 77.2 % of cases. *Id*. Thus, "[t]he enhancements are intended to increase the base offense level based on the presence of an aggravating factor, but they routinely apply to the typical distribution, receipt, and possession offender, with minimal variation in application rate." *Id*. at 19. (concluding "across all non-production child pornography offense types, 2G2.2 fails to distinguish adequately between more and less sever offenders"); *see also United States v. Dorvee*, 616 F.3d.174, 186–7 (2nd Cir. 2010) (noting that 2G2.2 results in little distinction between run-of-the-mill cases and the most dangerous offenders).

Def.'s Objections, ECF No. 154-3 at 2. His attorneys also filed a motion for a variance. Sent. Mem., ECF No. 105. Furthermore, the record reflects that the sentencing judge was presented with the objections before the sentencing hearing—but denied each one. Sent. Tr., ECF No. 122, at 2:19–3:1.

Under these circumstances, Ortiz cannot show his counsels' performance was either deficient or prejudiced his cause.

**EVIDENTIARY HEARING**

A movant must produce "independent indicia of the likely merit of [his] allegations" to warrant an evidentiary hearing. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)). Once a movant presents such independent evidence, "'[a] motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008) (quoting *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992)). When a movant's files and records "make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B 1981).

Ortiz has failed to produce independent indicia of the likely merit of his allegations. The motion, files, and records in this case are adequate to dispose fully and fairly of his claims. His

cause requires no further inquiry on collateral review—and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). He may not receive a certificate of appealability unless he "has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). He "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" when a district court rejects his constitutional claims on the merits. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). He must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" when a district court rejects his claims solely on procedural grounds. *Slack*, 529 U.S. at 484.

Reasonable jurists could not debate the Court's reasoning for denying Ortiz's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

The Court will not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Ortiz has failed to meet his burden to show his counsel's (1) performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. The Court further concludes that Ortiz has failed to successfully assert claims

14

establishing (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *Seyfert*, 67 F.3d at 546. The Court also concludes that Ortiz is not entitled to an evidentiary hearing or a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Ricardo Ismael Ortiz is **DENIED** an evidentiary hearing.

**IT IS FURTHER ORDERED** that Ricardo Ismael Ortiz's *pro se* "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 149) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Ricardo Ismael Ortiz is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

**SIGNED** this 24th day of July 2025.

**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**